Devin Fok (SBN #256599)
**DHF Law, APC**
234 E. Colorado Blvd., 8th Floor
Pasadena, CA 91101
Ph: (310) 430-9933
Fax: (818) 484-2023
devin@devinfoklaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

VIRGINIA ABROGINA, as an individual, and on behalf of the putative class,

　　　　　Plaintiff(s),

　　vs.

KENTECH CONSULTING, INC., a foreign corporation doing business in California; ALERE, INC., a foreign corporation doing business in California; and DOES 1-10 inclusive,

　　　　　Defendants.

CASE NO. 16-CV-0662-DMS-WVG

**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT. 15 U.S.C. §1681 et seq.; CALIFORNIA LABOR CODE §432.7**

**JURY TRIAL DEMANDED**

CLASS ACTION COMPLAINT FOR DAMAGES

1

2    Plaintiff VIRGINIA ABROGINA (hereafter, "ABROGINA" or

3   "Plaintiff") complains against Defendants KENTECH CONSULTING, a

4   foreign corporation doing business in California, (hereafter, "KENTECH");;

5   ALERE, INC., a  foreign corporation doing business in California, (hereafter,

6   "ALERE"); and DOES 1-10 inclusive (hereinafter collectively as

7   "Defendants"), and alleges as follows:

8
                              **NATURE OF THE ACTION**
9

10       1.    It is estimated that one in four adults in the United States have a

11   criminal record of some kind and that more than ninety percent of all

12   employers in the United States perform criminal background checks on job

13   candidates.[1]

14       2.    Most employers are reluctant to hire people with conviction

15   history.[2]

16       3.    Existing law requires employers to consider certain relevant

17   factors, including the age, nature, and severity of a job applicant's criminal

18   record and the duties to be performed, before making an adverse employment

19   decision based on a person's criminal record.[3]

20

21

22   [1]. NAT'L CONSUMER LAW CTR., BROKEN RECORDS: HOW ERRORS BY CRIMINAL BACKGROUND CHECKING
     COMPANIES HARM WORKERS AND BUSINESSES (Apr. 2012), *at* 3.  *See also* SOC'Y FOR HUMAN RES. MGMT.,
23   BACKGROUND CHECKING: CONDUCTING CRIMINAL BACKGROUND CHECKS, slide 3 (Jan. 22, 2010), *located
     at* http://www.slideshare.net/shrm/background-check-criminal  (last visited on May 2, 2012); Ben Geiger,
24   *Comment: The Case for Treating Ex-Offenders as a Suspect Class*, 94 CAL. L. REV. 1191, 1193 (2006).
     [2] Harry Holzer, Steven Raphael & Michael A. Stoll, *Employer Demand for Ex-Offenders: Recent Evidence
25   from Los Angeles*, Nat'l Crim. J. Ref. Svs. (March 2003), *available at*
     https://www.ncjrs.gov/App/Publications/abstract.aspx?ID=244705.
26   [3] *See generally* Equal Employment Opportunity Commission, Enforcement Guidance on the Consideration
     of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of
27   1964, *as amended*, 42 U.S.C. § 2000e *et seq* (Apr. 25, 2012)., *available at*
     http://www.eeoc.gov/laws/guidance/arrest_conviction.cfm.

28
                                        -2-

4.    It is therefore imperative that criminal background check companies provide accurate, complete, and up-to-date information about a job applicant's criminal record.

5.    To further this compelling interest, Congress (through the Fair Credit Reporting Act ("FCRA") under 15 USC §1681 *et seq.*) enacted comprehensive legislation regulating the procurement and issuance of background check reports, stating that " consumer reporting agencies have assumed a vital role" and that "there is need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 USC §1681(a).

6.    The FCRA requires a background check company to follow extremely stringent procedures to ensure that whenever criminal history information is reported, it is accurate, complete, and up to date.

7.    Under 15 USC §1681e(b), a background check company "shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates." (Emphasis added).

8.    In addition, when public records information such as criminal history information is reported in the employment context, the background check company is required to "maintain ***strict procedures*** designed to insure that … [the information reported] is complete and up to date." 15 USC §1681k(a)(2) (emphasis added).

9.    Further, under the FCRA, 15 U.S.C. § 1681b(b)(3)(A), before taking any adverse employment action based in whole or in part on a consumer report, the person intending to take such adverse action must provide to the job applicant:

      a.    a copy of the consumer report;

      b.    a description in writing of the rights of the consumer under the FCRA; and

          c.    a reasonable opportunity to dispute the information before rendering the adverse employment decision.

10.    After an adverse action occurs, the consumer job applicant must receive a second notice, mandated by 15 U.S.C. § 1681m(a).  (Hereafter, Plaintiff will refer to the first of those notices as the "pre-adverse action notice," and the second as the "adverse action notice.")

11.    The reasons for the pre-adverse action notice requirement in employment situations are to alert the job applicant that he is about to be rejected based on the content of a report, and to give him an opportunity to challenge the accuracy or relevancy of the information with the consumer reporting agency or the employer before the job prospect is lost.

12.    The pre-adverse action notice requirement is unqualified. "Employers must comply with the pre-adverse action disclosure requirement even where the information contained in the consumer report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action."  FTC, 40 years of Experience with the Fair Credit Reporting Act (July 2011), p. 53.

13.    This requirement makes sense particularly where a background check company or consumer reporting agency fails to accurately disclose public records information resulting in loss of employment such as the case for Plaintiff.

14.    In connection with the procurement and issuance of Plaintiff's consumer report, none of these mandates were followed by the respective parties. As further described below, Plaintiff lost a valuable employment opportunity as a result of an inaccurate background check report that disclosed incomplete and outdated information. This compounded by the ALERE'S failure to provide pre-adverse action notice caused significant financial harm and emotional distress for Plaintiff

# THE PARTIES

15.     Plaintiff is and at all times relevant herein was, a resident of the County of San Diego in the State of California.

16.     Defendant KENTECH is a consumer reporting agency, and is and at all times herein mentioned was, a foreign corporation doing business in the State of California.

17.     Suna Solutions, Inc. ("SUNA") is a staffing employment agency, and is and all times herein mentioned was a California corporation. A separate arbitration action has been filed against SUNA.

18.     Defendant ALERE is a global diagnostic device and service provider, and is at all times herein mentioned was, a foreign corporation doing business in the State of California.

19.     For purposes of the FCRA, KENTECH is a "consumer reporting agency" as defined under 15 USC §1681a(f) because they are "person which, for monetary fees, dues…regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing *consumer reports*." (Emphasis added).

20.     A "consumer report" is "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, *character, general reputation, personal characteristics, or mode of living* which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for….employment." 15 USC §1681a(d) (emphasis added).

21.     KENTECH'S reports, including the background check report at issue in the present case, contain background information on consumers

-5-

regarding their general reputation, character, mode of living or other personal characteristics. Among other things, KENTECH'S reports typically include information regarding criminal histories.

22.    KENTECH sells background check reports to, among others, prospective employers.

23.    SUNA and ALERE are corporations that regularly conduct business in San Diego County, California and are entities regulated under both the Fair Credit Reporting Act ("FCRA" 15 USC  §1681 *et seq.*) as a user of consumer reports within the meaning of 15 USC §1681a(d) for employment purposes.

24.    Plaintiff is ignorant of the Defendants sued herein as DOES 1-10, inclusive, and therefore sues those Defendants by such capacities when such information is ascertained.

25.    Specifically, Plaintiff intends to amend her Complaint to add additional claims against the proprietor of the P.R.I.O.R.S. database, who is currently a DOE Defendant whose true identity is unknown to Plaintiff at this time and will likely be discovered through service of written interrogatories on Defendant KENTECH.

26.    Plaintiff is informed and believes and thereon alleges that each of the Doe Defendants is responsible in some manner for the occurrences herein alleged and that Plaintiff's damages as herein alleged were proximately caused by such occurrences.

27.    Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, Defendants DOES 1-10, were principals or agents of each other and of the named Defendants and in doing the things alleged in this complaint, were acting in the scope of such agency and with the permission and consent of Defendants.

//

//

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

**JURISDICTION AND VENUE**

28.   Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331 and supplemental jurisdiction exists for the state law claims under 28 U.S.C. § 1367.

29.   Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

**FACTS**

30.   On or about January 6, 2009, Plaintiff was convicted of violation of Penal Code § 487(d)(1) PC for felony grand theft auto and sentenced to 3 years of formal probation including a restitution fine.

31.   On September 13, 2013, Plaintiff's conviction was dismissed pursuant to California Penal Code § 1203.4. A redacted copy of the dismissal order is attached as **Exhibit 1**. This is commonly referred to by the courts and practioners as "expungement." *See Stephens v. Toomey,* 51 Cal.2d 864, 870 (1959) (referring to Pen. C. §1203.4 as "statutory rehabilitation" where "the proceedings be expunged from the record and the case dismissed")[4].

32.   On or about early January of 2014, Plaintiff applied for a job at ALERE in San Diego County.

33.   On or about January of 2014, Plaintiff was contacted by a human resource ("HR") personnel from ALERE for a telephone interview. During this phone interview, Plaintiff was told that there was a temporary to permanent job position opening, and that they wanted Plaintiff to start working for ALERE starting on February 3, 2014. During this phone

---

[4] Though not a true "expungement" in the sense of a total eradication of the court record, the courts as well as practitioners have continued to refer to this statutory provision and no other as an "expungement" of a conviction.

-7-

interview, ALERE advised Plaintiff to go to SUNA, a staffing agency, and fill out the paperwork for the job position. Accordingly, Plaintiff went to SUNA and completed the paperwork for the job opening. On January 24, 2014, Plaintiff signed SUNA's disclosure and authorization to obtain background check information forms, and started working at ALERE's jobsite on or about February 3, 2014.

34.    Plaintiff did not know about SUNA until after her initial interview with ALERE and at all times relevant herein, Plaintiff had applied and intended to work for ALERE. Her duties were in fact scheduled to be performed at ALERE's premises and under ALERE's direction and control.

35.    Plaintiff therefore is informed and believes and thereon alleges that SUNA, a staffing agency for its client ALERE was an agent of ALERE and is jointly and severally liable along with ALERE for violations of the FCRA. *See Reynolds v. Hartford Financial Services Group, Inc.*, 435 F.3d 1081, 1095-1096 (9th Cir. 2006) *rev'd on other grounds sub nom. Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).

36.    Such violations include the use of defective disclosure forms in connection with causing Plaintiff's consumer report to be procured and failing to provide pre-adverse action notice to Plaintiff before taking adverse action on Plaintiff in whole or in part on the basis of an erroneous consumer report.

37.    While working at ALERE, Plaintiff was told by one of ALERE's personnel that they were looking to hire a permanent employee and Plaintiff was encouraged to interview for the position.

38.    On or about February 10, 2014, Plaintiff had a four hour interview with ALERE'S recruiter, manager, and director of Human Resources for the permanent position.

39.    Plaintiff is informed and believes, and thereon alleges, that ALERE procured or caused Plaintiff's background screening report to be

-8-

procured.. As a result, on the same day, February 10, 2014, SUNA made a request to KENTECH to furnish a background screening report of Plaintiff, and on February 11, 2014, KENTECH produced the background screening report of Plaintiff.

40.     On or about February 12, 2014, Plaintiff received a telephone call from SUNA and was advised not to return to work at ALERE because her background check report came out "negative." Plaintiff informed SUNA that there should not be anything on her background check report because she only had one conviction which had been expunged.

41.     Because at all times relevant herein, Plaintiff was already working at ALERE and because Plaintiff was expected to continue performing her work duties at ALERE, Plaintiff believes and thereon alleges that the above-described telephone call from SUNA was caused, in whole or in part, by ALERE and that adverse action was taken by ALERE in whole or in part on the basis of the consumer report.

42.     Moreover, prior to the procurement of Plaintiff's background report, Plaintiff was required to sign a document entitled: "SUNA DISCLOSURE AND AUTHORIZATION TO OBTAIN BACKGROUND INFORMATION" which authorizes the use of the background report by "Suna and its clients for employment purposes…". A true and correct copy is attached as **Exhibit 2 (redacted)**.

43.     ALERE is SUNA's client.

44.     Later the same day, on or about February 12, 2014, SUNA also sent Plaintiff an email with an attachment titled "Adverse Action Notice" dated February 11, 2014, and a copy of Plaintiff's background check report.

45.     However, the background check report on Plaintiff furnished by KENTECH was inaccurate, incomplete, and outdated because it contained information regarding a conviction which had been expunged/dismissed under Cal. Pen. C. §1203.4.

46.    Plaintiff contacted KENTECH by telephone and later filled out an online form on KENTECH's website informing KENTECH that the background check report furnished by KENTECH was erroneous because the conviction listed on her background check report had been expunged.

47.    KENTECH issued another background check report without the expunged conviction.

48.    After receiving the updated background check report from KENTECH, she contacted SUNA and told SUNA that her background check report had been corrected. Plaintiff asked SUNA to contact ALERE and inform them about her updated background check report.

49.    Plaintiff was advised by SUNA that SUNA would contact ALERE and let them know about Plaintiff's updated background check report.

50.    Subsequently, Plaintiff sent follow up emails to SUNA regarding the job position at ALERE and inquired whether SUNA had advised ALERE about her updated background check report.

51.    However, Plaintiff was informed by SUNA that the job position at ALERE had been filled and was no longer available. Hence, Plaintiff's employment opportunity with ALERE was lost.

52.    Accordingly, Plaintiff is informed and believes, and thereon alleges that adverse action was taken by ALERE in whole or in part on the basis of the information disclosed in the original consumer report issued by KENTECH.

53.    SUNA advised Plaintiff that her information would be kept on file. However, to date, SUNA has not contacted Plaintiff regarding any other job opportunities.

//

//

//

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

1

2

## KENTECH'S LIABILITY

3

4       54.    On or about February 10, 2014, the subject background check

5   report was, in whole or in part, procured or caused to be procured by
ALERE.

6       55.    On February 11, 2014, KENTECH used its *instant* background

7   check product called "COPS 360 NATIONWIDE" to pull information from a

8   third-party database. A true and correct copy of the report is attached hereto
as **Exhibit 3 (redacted).**

9       56.    The database used by KENTECH was called "Public Record

10  Indexes of Record Searches" or "P.R.I.O.R.S." which is comprised of

11  criminal data compiled from *previously* ordered consumer reports. As the

12  database used by KENTECH is compiled from *previously* ordered consumer

13  reports, KENTECH's reports, as expected, frequently reflect outdated and

14  inaccurate information that fail to capture recent dispositions, including

15  recent expungements or dismissals of criminal cases.

16      57.    In other words, KENTECH uses a database company that resells

17  "*used*" consumer reports previously sold to third parties months or even

18  years ago on the same consumer

19      58.    By the very nature of using a database consisting of previously

20  sold consumer reports, KENTECH was well-aware that KENTECH's

21  consumer reports would often reflect outdated and inaccurate information.

22  However, KENTECH nevertheless used this database for its instant

23  background check product and sold it individually or in combination with an

24  additional level of search called "County Validation."

25      59.    Information retrieved from this "P.R.I.O.R.S." database

26  reflected Plaintiff's 2009 Felony Grand Theft conviction.

27      60.    However, because this information is outdated, the report did

28  not reflect the fact that the case had been expunged in 2013.

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

61.    With respect to Plaintiff, the only additional level of search that KENTECH did was no more than having a researcher go on the San Diego County Superior Court's website and copy whatever information was available online.

62.    This cursory online search could not have taken more than 5 minutes because pursuant to San Diego County Superior Court's policy, the only criminal case information available to the public through its website is the name of the criminal defendant and the case number.

63.    Thus, the name of the underlying criminal charge, severity of the offense (*e.g.,* infraction/misdemeanor/felony), and disposition – including its subsequent expungement or dismissal are not displayed on the website. A true and correct copy of the available information related to Plaintiff's 2009 conviction through the San Diego County Superior Court's website is attached hereto as **Exhibit 4.**

64.    Despite the fact that the FCRA, 15 U.S.C. §1681k(a)(2) requires consumer reporting agencies to maintain ***strict procedures*** to ensure that the information being reported is  "complete and up to date", KENTECH inquired no further.

65.    Rather, KENTECH simply left the fields related to: "Type"; "Disposition"; "Offense"; "Disposition Date"; and other fields in the Plaintiff's background check report blank. No reasonable consumer reporting agency could permit its researchers to copy blank fields "as is" and resell the same information to a consumer's employer.

66.    Furthermore, KENTECH did not send any researcher to San Diego County Superior Court to copy physical records readily available at the San Diego County Superior Court's clerk's office.

67.    Ultimately, KENTECH took the incomplete county level results from the court's website and combined it with the outdated instant results from the P.R.I.O.R.S. database about Plaintiff, and provided it to SUNA and

-12-

ALERE which resulted in Plaintiff's immediate termination caused to be made by ALERE.

68.    Moreover, before KENTECH may furnish a consumer report for employment purposes, 15 U.S.C. §1681b(b)(1)(A)(i) requires that it first receives retrospective certification from the user or employer of the report that *it has complied* with 15 U.S.C. §1681b(b)(2)(A)(i) by making a "clear and conspicuous" disclosure to the consumer "consisting solely" of the disclosure "that a consumer report may be obtained for employment purposes."

69.    Plaintiff is informed and believes and thereon alleges that rather than obtaining this retrospective certification, KENTECH utilized a one-time prospective, blanket certification from its users including SUNA and ALERE, and furnished its consumer reports including the report furnished on Plaintiff.

70.    As further described below, the 15 U.S.C. §1681b(b)(2)(A)(i) disclosure used to obtain Plaintiff's authorization was not a compliant disclosure and therefore, it was illegal for KENTECH to furnish a consumer report in the first instance.

71.    KENTECH'S practices and procedures described herein, affect and continue to affect Plaintiff and other consumers whose criminal charges have been dismissed or expunged, or whose records are located in jurisdictions where their complete and up to date information are not readily available on the court's websites.

72.    In fact, a large number of jurisdictions in the United States including most of the superior courts in California do not disclose full and complete criminal records on its case access websites.

73.    Accordingly, Plaintiff believes a class action in this context is appropriate.

-13-

**ALERE'S LIABILITY**

74.    In connection with Plaintiff's employment and on or about January 24, 2014, SUNA and ALERE furnished a document entitled "DISCLOSURE AND AUTHORIZATION TO OBTAIN BACKGROUND INFORMATION" purporting to comply with 15 U.S.C. §1681b(b)(2)(A)(i). **Exhibit 2.**

75.    Despite the fact that the only permitted disclosure is a clear and conspicuous statement in a standalone disclosure that consist solely of the disclosure that "a consumer report may be obtained for employment purpose," the subject disclosure is a 5-page disclosure in small font which includes not only all conceivable disclosures applicable under the FCRA but also those under California's background check statute called the Investigative Consumer Reporting Agencies Act ("ICRAA" Cal. Civ. C. §1786 *et seq.*).

76.    Specifically, the subject disclosure includes but not limited to the following extraneous information:

    a.    Statements that SUNA'S clients, including ALERE, would require, and have, access to Plaintiff's consumer report;

    b.    A statement that a consumer report may include a credit report obtained for employment purposes from Experian, Trans Union, or Equifax—which directly contradicts California Labor Code §1024.5's general prohibition against the use of credit reports for employment purposes;

    c.    A statement related to disclosure under 15 U.S.C. §1681d for whenever consumer information is obtained through personal interviews which was not the case here;

    d.    An ambiguous statement related to Plaintiff's rights to receive a copy of the consumer report if SUNA takes adverse

-14-

action against Plaintiff which is in itself misleading because under the FCRA, Plaintiff was entitled to a copy of the report *before* any adverse action can be taken[5];

e.     California mandated disclosures under California Civil Code §1786.16(a)(2)(B) which are separately required in its own standalone disclosure under California law;

f.     The use of the term "investigative consumer report" which is extremely problematic in a disclosure form that purports to combine all of the disclosures under the FCRA and ICRAA because the same term has different meanings in its respective statutes.

g.     Disclosures related to 15 U.S.C. §1681g relating to a consumer's right to obtain his/her report directly from the consumer reporting agency;

h.     Disclosures related to 15 U.S.C. §1681i relating to the consumer's right to dispute the information with the consumer reporting agency;

i.     Disclosures related to 15 U.S.C. §1681a(y)(2) related to adverse action taken as a result of suspicion of an employee's misconduct or wrong doing;

j.     A 2-page section where Plaintiff was required to input various personally identifying information; and

k.     A section where Plaintiff was required to state whether she has ever been discharged from employment; and whether she has ever been convicted of a felony or misdemeanor offense.

---

[5] Under the FCRA, 15 U.S.C. §1681b(b)(3), the report must be disclosed within a reasonable period before the taking of adverse action; and under the ICRAA, Cal. Civ. C. 1786.16(b)(1) requires a report to be disclosed within 3 days of receipt by the employer if the applicant so elects or following the taking of adverse action pursuant to Cal. Civ. C. 1786.40(a) regardless of whether the election was made.

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

77. All of the above-described extraneous additions to the form amounted to five pages of eye straining typeface writing when it should have been a simple disclosure form. (*See Jones v. Halstead Mgmt. Co.,*2015 U.S. Dist. LEXIS 12807, *19 (S.D.N.Y. 2015) [finding a similar authorization form in willful/reckless violation of  15 U.S.C. §1681b(b)(2)(A)(i) in ruling on a motion to dismiss]).

78. More egregiously, despite certifying that it will comply with 15 U.S.C. §1681b(b)(3) and provide consumers with pre-adverse action notice prior to taking adverse action, ALERE did not send any pre-adverse action notices to Plaintiff. Rather, ALERE used the information in the background report to terminate Plaintiff on the same day that KENTECH's report was received on February 11, 2014.

79. Instead of sending a pre-adverse action notice, by correspondence dated the same date and entitled "Adverse Action Notice," ALERE caused SUNA to send Plaintiff a letter informing her that "we find it necessary to rescind our previous offer of employment." "This decision was based in whole or in part, on the information provided us in a Consumer Report or Investigative Consumer Report." A true and correct copy is attached as **Exhibit 5 (redacted).**

80. The subject report was attached to this letter.

81. Neither SUNA nor ALERE ever sent Plaintiff a pre-adverse action notice. Despite the fact that Plaintiff had promptly disputed the information and KENTECH had issued a new report omitting the criminal conviction that had been expunged or dismissed pursuant to Cal. Pen. C. §1203.4., neither SUNA nor ALERE ever rehired Plaintiff.

82. Effective January 1, 2014, California Labor Code §432.7 was amended to expressly prohibit any employer from utilizing a criminal conviction dismissed pursuant to Cal. Pen. C. §1203.4 in determining any condition for employment including "hiring, promotion, termination…"

83.    California employers are further prohibited to seek "from any source whatsoever" any conviction that has been dismissed pursuant to Cal. Pen. C. §1203.4. (Cal. Lab. C. §432.7(a)).

84.    Although page 5 of the disclosure form, asks the applicant whether s/he has been convicted or misdemeanor by any court, it does not expressly requests the applicant from refraining disclosure of convictions which has been expunged or dismissed pursuant to Cal. Pen. C. §1203.4.

85.    By not providing Plaintiff with a reasonable opportunity to dispute the information and by terminating Plaintiff on the basis of a conviction that has already been dismissed or expunged, SUNA AND ALLERE caused damages to Plaintiff.

## CLASS ACTION ALLEGATIONS

86.    KENTECH'S practices and procedures described herein affected and continue to affect Plaintiff and other consumers whose criminal charges have been dismissed or expunged, or who have obtained similar post-conviction relief, and consumers who have been found not guilty of the charges leveled against them.

87.    ALERE's practices and procedures described herein also affected and continue to affect Plaintiff and other consumers who have been subject to an adverse employment action on the basis of information in consumer reports.

88.    Plaintiff brings this action individually and as a class action on behalf of six putative subclasses defined as follows:

All natural persons within the United States who were the subject of a consumer report furnished to a third party by KENTECH for employment purposes, and for whom KENTECH did not receive a

retrospective certification that the user **has complied** with 15 U.S.C. §1681b(b)(2)(A) in the two years preceding the filing of this complaint until final resolution of this action. Such natural persons are hereinafter referred to collectively as "Subclass 1."

All natural persons within the United States who were the subject of a consumer report furnished to a third party by KENTECH for employment purposes, and whose report contained any negative public record of criminal arrest, charge, or conviction, and whose report omits one or more of the following information: "type", "offense"; "disposition"; "disposition date"; "offense date"; "sentencing" during the two years preceding the filing of this action until final resolution of this action. Such natural persons are hereinafter referred to collectively as "Subclass 2."

All natural persons within the United States who were the subject of a consumer report including information retrieved from the "P.R.I.O.R.S." database and furnished to a third party by KENTECH for employment purposes, and for whom who were not sent a contemporaneous notice of the disclosure of public record information during the two years preceding the filing of this action until final resolution of this action. Such natural persons are hereinafter referred to collectively as "Subclass 3."

All natural persons residing in the United States who were the subject of a consumer report that was procured or caused to be procured, in whole or in part, by ALERE for employment purposes, and who were provided a disclosure similar to those referenced in this complaint during the two years preceding the filing of this action until final

-18-

resolution of this action. Such natural persons are hereinafter referred to collectively as "Subclass 4."

All natural persons residing in the United States who were the subject of a consumer report that was procured or caused to be procured, in whole or in part, by ALERE for employment purposes, and who were subject to an adverse employment action based on that report during the two years preceding the filing of this action until final resolution of this action. Such natural persons are hereinafter referred to collectively as "Subclass 5."

89.     The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to KENTECH, ALERE AND SUNA, Plaintiff is informed and believes and on that basis alleges that each subclass is comprised of hundreds or thousands of consumers. KENTECH sells criminal history record information to thousands of businesses throughout the country, and its reports to such businesses are standardized, form documents, produced by the same online system, practices and procedures applicable to all subjects of the reports. ALERE regularly obtains and use information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, as a basis for adverse employment action. Plaintiff is informed and believes that, during the relevant time period, ALERE failed to provide pre-adverse action notice to thousands of employees and prospective employees. The size of each proposed subclasses meet the numerosity requirement

90.     The identities of the individual Class members should be readily ascertainable from Defendants' records. Notice may be mailed to Class members using the public record information in Defendants' files.

91.    There is a significant community of interest among putative Subclass 1 to 3 members, as there are questions of law and fact common to Subclass 1 to 3 that predominate over any questions affecting only individual Class Members. Those questions include:

a.    whether KENTECH violated 15 U.S.C. § 1681k(a)(1) by failing to notify consumers contemporaneously of the fact that criminal record information was being sent to prospective employers;

b.    whether KENTECH violated 15 U.S.C. § 1681k(a)(2) by failing to maintain strict procedures to assure that the criminal record information furnished to its customers is complete and up-to-date;

c.    whether KENTECH violated section 15 U.S.C. §1681b(b)(1)(A)(i) by furnishing a consumer report for employment purposes without first obtaining a retrospective certification from the person obtaining the report that the person has complied with 15 U.S.C. §1681b(b)(2);

d.    whether KENTECH violated 15 USC §1681b(b)(1)(A)(ii), by failing to use reasonable procedures to ensure compliance with the certification required under 15 USC §1681b(b)(1)(A)(ii) by using information in a background check report impermissibly, in violation of Federal or State equal employment opportunity laws or regulations;

e.    whether those violations were reckless, intentional, willful, or malicious.

92.    There is a significant community of interest among putative Subclass 4 and 5 members, as there are questions of law and fact common to Subclass 4 and 5 members that predominate over any questions affecting only individual Class Members. Those questions include:

-20-

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

a.      whether ALERE violated 15 U.S.C. §1681b(b)(3)(A), failing to provide pre-adverse action notice to consumers before taking adverse action based in whole or in part on a consumer report;

b.      whether ALERE violated 15 U.S.C. §1681b(b)(2)(A) for failing to provide a clear and conspicuous disclosure made in writing to the consumer at any time before a consumer report is procured or caused to be procured, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes;

c.      whether those violations were intentional, reckless, willful, or malicious.

93.     Plaintiff's claims are typical of the claims of each subclass, which arise from the same operative facts and are based on the same legal theories.

94.     Plaintiff will fairly and adequately protect the interests of each subclass. Plaintiff is committed to vigorously litigating this matter and has no conflict with each subclass. Plaintiff has secured counsel experienced in handling civil rights and consumer class actions.

95.     A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of members of each subclass in individually controlling the prosecution of separate claims against KENTECH and ALERE is small, as the maximum statutory damages recoverable by any one subclass member is limited to $1,000.00 under the FCRA. Management of the class claims in a single proceeding will avoid inconsistent judgments and result in a more efficient use of judicial resources than resolving these same issues in many individual cases.

//

//

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

**FIRST CAUSE OF ACTION**

**(Violation of 15 United States Code §1681b(b)(1)(A) against KENTECH and DOES 1-5)**

**(on behalf of Plaintiff and Subclass 1)**

96.     Plaintiff hereby incorporates by reference the allegations of each and every paragraph above.

97.     Plaintiff is informed and believes, and thereon alleges that KENTECH furnished Plaintiff's consumer report and those similarly situated without first receiving a retrospective certification that the user of the consumer report has complied with 15 U.S.C. §1681b(b)(2)(A).

98.     Rather, despite the clear language of the FCRA, KENTECH received a one-time prospective, blanket certification from each user in connection with executing the initial service agreement between KENTECH and recipients of consumer reports.

99.     KENTECH's violations were willful or reckless because KENTECH was aware of their obligations under the FCRA but nonetheless consciously elected to disregard their obligations.

100.     KENTECH's violations entitle Plaintiff to damages pursuant to 15 USC § 1681n, including statutory damages in the amount of not less than $100 and no more than $1,000, punitive damages, reasonable attorney's fees, and any other relief granted by this Court.

//

//

//

//

//

//

//

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

**SECOND CAUSE OF ACTION**

**(Violation of 15 United States Code §1681k(a) against KENTECH and DOES 1-5)**

**(on behalf of Plaintiff and Subclasses 2 and 3)**

101.   Plaintiff hereby incorporates by reference the allegations of each and every paragraph above.

102.   When public records information that has an adverse impact on a consumer's ability to obtain employment is reported, KENTECH must use "strict procedures" to ensure that the information reported is "complete and up to date." 15 USC §1681k(a)(2).

103.   These statutory requirements have been unchanged since the enactment of the FCRA more than 40 years ago and Plaintiff believes that KENTECH is well-aware of the statutory mandates.

104.   Plaintiff's criminal records are publicly and readily available through the California court systems.

105.   Plaintiff is informed and believes that KENTECH nevertheless failed to visually inspect, copy, or analyze the readily-available information in reckless disregard of the clear statutory mandate to use "strict procedure" in providing complete and up to date background check reports that will have a detrimental impact on a consumer's ability to obtain employment.

106.   In San Diego County where Plaintiff's records are located, the cost per page for obtaining copies of court documents is $.50 per page. The Clerk's Documents and Minutes on Plaintiff which would have provided accurate, complete, and up to date information on Plaintiff's criminal history consists of only several pages at a cost of less than $5.

107.   Moreover, at all times relevant herein, KENTECH did not and does not provide contemporaneous notice that public record information is

-23-

reported to the user of consumer report together with the name and address of the person to whom such information is being reported.

108.  KENTECH's violations were willful or reckless because KENTECH was aware of their obligations under the FCRA but nonetheless consciously elected to disregard their obligations.

109.  KENTECH's violations entitle Plaintiff to damages pursuant to 15 USC § 1681n, including statutory damages in the amount of not less than $100 and no more than $1,000, punitive damages, reasonable attorney's fees, and any other relief granted by this court.

## THIRD CAUSE OF ACTION
**(Violation of 15 United States Code §1681b(2)(A)(i) against Defendant ALERE; and DOES 6-10)**
**(on behalf of Plaintiff and Subclass 4)**

110.  Plaintiff hereby incorporates by reference the allegations of each and every paragraph above.

111.  ALERE recklessly, willfully, and/or intentionally violated 15 U.S.C. §1681b(b)(2)(A)(i) by failing to provide clear and conspicuous disclosure consisting solely of the disclosure that a consumer report may be obtained for employment purposes prior to procuring consumer reports on Plaintiff and those similarly situated.

112.  ALERE'S violations were willful or reckless because KENTECH was aware of their obligations under the FCRA but nonetheless consciously elected to disregard their obligations.

113.  ALERE's violations entitle Plaintiff to damages pursuant to 15 USC § 1681n, including statutory damages in the amount of not less than $100 and no more than $1,000, punitive damages, reasonable attorney's fees, and any other relief granted by this court.

**FOURTH CAUSE OF ACTION**

**(Violation of 15 USC §1681b(b)(3)(A) against Defendant ALERE; and Does 6-10)**

**(on behalf of Plaintiff and Subclass 5)**

114.   Plaintiff hereby incorporates by reference the allegations of each and every paragraph above.

115.   ALERE violated the FCRA, by failing to provide Plaintiff a pre-adverse action notice before taking adverse action, based in whole or in part on Plaintiff's consumer report.

116.   ALERE'S violations were willful or reckless because KENTECH was aware of their obligations under the FCRA but nonetheless consciously elected to disregard their obligations.

117.   ALERE's violations entitle Plaintiff to damages pursuant to 15 USC § 1681n, including statutory damages in the amount of not less than $100 and no more than $1,000, punitive damages, reasonable attorney's fees, and any other relief granted by this court.

**FIFTH CAUSE OF ACTION**

**(Violation of California Labor Code §432.7(a) against Defendant ALERE; and DOES 6-10)**

**(on behalf of Plaintiff)**

118.   Plaintiff hereby incorporates by reference the allegations of each and every paragraph above.

119.   Defendants violated California Labor Code §432.7(a) by taking adverse action against Plaintiff on the basis of a conviction which was dismissed pursuant to Penal Code §1203.4.

120.   Pursuant to Cal. Lab. C. §432.7(c), Plaintiff is entitled to actual or statutory damages of not less than $200 for each and every one of these violations plus costs and reasonable attorney's fees.

121.   In addition, Defendants intentionally violated Cal. Lab. C. §432.7(a) because, *inter alia*, they were on notice that her conviction had been expunged.

122.   As a result of Defendants' intentional violation, Plaintiff is entitled to treble actual damages or $500, whichever is greater, plus costs, and reasonable attorney's fees.

123.   Pursuant to Lab. C. §432.7(d), these remedies are in addition to, and not in derogation of any other rights and remedies under any other law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.  As to all class-wide claims:
    a.  For a declaration that Defendants' practices violate the FCRA, 15 USC §1681 *et seq.*;
    b.  For statutory, compensatory, special, general and punitive damages according to proof and as applicable against all Defendants;
    c.  For interest upon such damages as permitted by law;
    d.  For an award of reasonable attorneys' fees provided by law under all applicable statutes;
    e.  For the costs of suit;
    f.  For injunctive relief as applicable; and
    g.  For such other orders of the Court and further relief as the Court deems just and proper.

1    2.  As to her individual claim under Cal. Lab. C. § 432.7:

2        a.  For a declaration that Defendants' practices violated the statute;

3        b.  For statutory, compensatory, special, general and punitive damages

4            according to proof and as applicable against all Defendants;

5        c.  For interest upon such damages as permitted by law;

6        d.  For an award of reasonable attorneys' fees provided by law under

7            all applicable statutes;

8        e.  For the costs of suit;

9        f.  For injunctive relief as applicable; and

10       g.  For such other orders of the Court and further relief as the Court

            deems just and proper.

11

12                            **DEMAND FOR JURY TRIAL**

13

14    Plaintiff hereby request and demand a jury trial on all issues triable by

15   jury.

16

17    DATED: April 5, 2016              DEVIN H. FOK ESQ.

18                                      **DHF LAW, P.C.**

19

20

21                                      By: _____

22                                          Devin H. Fok

23                                      Attorney for Plaintiff and the proposed class

24

25

26

27

28

-27-