1  MESSNER REEVES LLP
Kathleen Carter (SBN 157790)
2  Jeffrey Gillette (SBN 123346)
Heather Stern (SBN 217447)
3  650 Town Center Drive, Suite 700
Costa Mesa, California 92626
4  Telephone:(949) 612-9128
Facsimile: (949) 438-2304
5
6  Attorneys for KENTECH CONSULTING, INC.

7  **IN THE UNITED STATES DISTRICT COURT**

8  **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

9

10  VIRGINIA ABROGINA, as an individual,
11  and on behalf of the putative class,

12         Plaintiff,

13      v.

14  KENTECH CONSULTING, INC. a foreign corporation doing business in
15  California; BACKGROUNDCHECKS.COM,
16  a limited liability company doing business in
17  California; and DOES 1-10 inclusive,

18         Defendant.

19
20
21
22
23
24
25
26
27
28

Case No. 16-CV-0662-DMSWVG

Assigned to Hon. Dana M. Sabraw

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT KENTECH CONSULTING, INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Date: Aug. 4, 2023
Time: 1:30 p.m.
Courtroom: 13A (13th Floor)

1

## <u>TABLE OF CONTENTS</u>

2    I.    Introduction and Summary of Argument ............................................................. 1

3    II.   Factual and Procedural Background ..................................................................... 1

4    III.  Legal Standard.................................................................................................... 7

5
6    IV.   Summary Judgment Should Be Granted in Favor of Kentech........................... 8

7       A.    Judgment Should be Entered in Favor of Kentech on Plaintiff's Claim for a
             Violation of 15 U.S.C §1681e(b) [reasonable procedures]…………….....…8

8       B.    Judgment Should be Entered in Favor of Kentech on Plaintiff's Claim for a
9             Violation of 15 U.S.C §1681k(a)(2) [strict procedures]……………......…    14

10      C.    Judgment Should be Entered in Favor of Kentech on Plaintiff's Claim for a
             Violation of 15 U.S.C §1681e(b) for claimed duplicative information ...…    16

11      D.    There is No Evidence of Any Willful Failure to Comply…. …....…  17

12   V.    Conclusion...................................................................................................... 18

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Abdeljalil v. Gen. Elec. Capital Corp.*,
   306 F.R.D. 303 (S.D. Cal. 2015) .......................................................... 6

6

7

*Adams v. Cnty. of Sacramento*,
   235 Cal.App.3d 872 (1991) ......................................................... 12, 14

8

9

*Aldaco v. RentGrow, Inc.*,
   921 F.3d 685 (7th Cir. 2019) .............................................................. 15

10

11

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................ 7

12

*Austin v. BankAmerica Serv. Corp.*,
   419 F. Supp. 730 (N.D. Ga. 1974) .................................................... 11

13

14

*Bee, Denning, Inc. v. Capital All. Grp.*,
   310 F.R.D. 614 (S.D. Cal. 2015) ........................................................ 6

15

*Carvalho v. Equifax Info. Servs., LLC*,
   629 F.3d 876 (9th Cir. 2010) .............................................................. 10

16

17

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................ 7

18

19

*Fite v. Retail Credit Company*,
   386 F.Supp. 1045 (D. Mon. 1975) ..................................................... 12

20

21

*Gold v. Lumber Liquidators Inc.*,
   Case No. 14-cv-05373-TEH, 2017 WL 2688077 (N.D. Cal. June 22,
   2017) ................................................................................................... 6

22

23

*Gorman v. Wolpoff & Abramson, LLP*,
   584 F.3d 1147 (9th Cir. 2009) ........................................................... 11

24

25

*Guimond v. Trans Union Credit Info. Co.*,
   45 F.3d 1329 (9th Cir. 1995) ............................................................... 9

26

27

*Hartranft v. Encore Cap. Grp., Inc.*,
   543 F. Supp. 3d 893 (S.D. Cal. 2021) ................................................ 7

28

*Hawkins v. Kroger Co.*,
   337 F.R.D. 518 (S.D. Cal. 2020) ........................................................ 5

*Henson v. CSC Credit Servs.*,
   29 F.3d 280 (7th Cir. 1994) ........................................................... 9, 10

*Knutson v. Schwan's Home Serv., Inc.*,
   No. 3:12–cv–0964-GPC–DHB, 2013 WL 4774763 (S.D. Cal. Sep.
   5, 2013) ................................................................................................ 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................... 7

*McCurley v. Royal Seas Cruises, Inc.*,
   331 F.R.D. 142 (S.D. Cal. 2019) ....................................................... 6

*Middlebrooks v. Retail Credit Co.*,
   416 F. Supp. 1013 (N.D. Ga. 1976) ................................................. 11

*Potter v. Chex Sys., Inc.*,
   128 F. Supp. 3d 1276 (S.D. Cal. 2015) ........................................... 12

*Radobenko v. Automated Equipment Co.*,
   520 F.2d 540 (9th Cir.1975) .............................................................. 8

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007) ........................................................................... 17

*Sessa v. Linear Motors, LLC*,
   2021 WL 6052134 (S.D.N.Y. 2021) ................................................ 10

*Stephens v. Toomey*,
   51 Cal.2d 864 (1959) ......................................................................... 2

*Stevenson v. TRW Inc.*,
   987 F.2d 288 (5th Cir. 1993) ........................................................... 17

*Todd v. Associated Credit Bureau Servs., Inc.*,
   451 F. Supp. 447 (E.D. Pa. 1977), *aff'd*, 578 F.2d 1376 (3d Cir.
   1978) ................................................................................................. 11

**Statutes**

15 U.S.C. § 1681e(b) ............................................................. 5, 6, 8, 15

15 U.S.C. § 1681k(a) .........................................................................5, 6, 13

Cal. Penal Code § 1203.4 ............................................................2, 3, 4, 10, 14

Cal. Penal Code § 487(b)(3) .......................................................................1

Cal. Penal Code § 487(d)(1) .......................................................................1

**Other Authorities**

Federal Rule of Civil Procedure 56(a) ……………………………………………7

1
2
3
4

Defendant Kentech Consulting, Inc. respectfully submits this Memorandum of Points and Authorities in support of its Motion for Summary Judgment, or in the alternative, Partial Summary Judgment.

## I.      Introduction and Summary of Argument

The Court should grant summary judgment in favor of Kentech in this Fair Credit Reporting Act ("FCRA") violation action.  Kentech provided a report that accurately stated that Plaintiff had been convicted of the crime of felony grand theft in San Diego County, California.  Plaintiff alleges that the report was inaccurate and/or incomplete because it truthfully reported her criminal conviction but did not also report the additional information that Plaintiff had recently sought and obtained an order from the state court "granting" her petition pursuant to "Penal Code 1203.4" – which she describes as an expungement or dismissal order, even though those words are not on the state court order itself and were not shown in the court docket that Kentech accessed to verify the information before it was reported.

As set forth below, Kentech complied with the statute and any alleged non-compliance did not cause any adverse effect to Plaintiff.  Accordingly, judgment should be entered in favor of Kentech.

## II.     Factual and Procedural Background

Plaintiff admittedly stole "about $80,000" from her prior employer, San Diego Gas & Electric, by writing checks to herself over a more than 12-month period, for "buying stuff" like "[c]lothes, purses, furnitures".  (Declaration of Heather Stern ("Stern Decl."), Exh. 7 [Abrogina Depo.], 19:21-23:9, 33:15-34:12, 55:23-56:6.)  In 2007, her theft was discovered by her employer and she was fired from her job.  (Stern Decl., Exh. 7 [Abrogina Depo.], 23:10-26:8.)

On or about January 6, 2009, Plaintiff was convicted of violation of Penal

Code § 487(b)(3) PC[1] for felony grand theft and sentenced to 3 years of formal probation including a probation fine of $680 and a restitution fine of $82,434.[2] (Stern Decl., Exh. 6 [Abrogina Decl., Docket 107-3], ¶ 7; Stern Decl., Exh. 3 [SAC], ¶ 34.)

Plaintiff borrowed money from her mother and paid the restitution fine of $82,434 back to her employer.  (Stern Decl., Exh. 7 [Abrogina Depo.], 50:7-51:8.)

On September 13, 2013, the felony minutes of the Superior Court of California, County of San Diego, reflect that Plaintiff's "petition for relief pursuant to [California Penal Code §] 1203.4" was "granted".[3]  (Stern Decl., Exh. 3 [SAC] at exh. 1 thereto, Docket No. 42 pp. 23.)  Plaintiff refers to this as "dismissal" and/or "expungement" of her conviction, although neither of those words appears in the

---

[1] Plaintiff's SAC alleges she was convicted of Penal Code § 487(d)(1) which is grand theft auto, however, at her deposition, she admitted it was theft of money from her employer over time which is PC 487(b)(3) as reflected also on Exhibit 1 to the SAC.  *See* Stern Decl., Exh. 3 [SAC].

[2] The SAC alleges that her conviction was for grand theft auto whereas the report listed a conviction for felony grand theft with an $82,434 restitution fine.  At her deposition, Plaintiff confirmed that the conviction was for felony grand theft from her employer over an extended period of time, as opposed to grand theft auto as alleged in the SAC.  Stern Decl., Exh. 7 [Abrogina Depo.], 19:21-23:9, 33:15-34:12, 55:23-56:6.

[3] At the time, Penal Code § 1203.4(a)(1) stated in pertinent part that: "In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, . . . , the defendant shall, at any time after the termination of the period of probation, . . . , be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if he or she has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon **dismiss** the accusations or information against the defendant and **except as noted below**, he or she shall thereafter be **released from all penalties and disabilities** resulting from the offense of which he or she has been convicted . . . ."  (Emphasis added.)  The statute also required disclosure of the conviction in certain circumstances and carved out other instances where the conviction would continue to have effect on the defendant.  Pen. Code § 1203.4(a)(1)-(4).

Court minutes.  (Stern Decl., Exh. 3 [SAC] ¶ 35, fn. 5, & exh. 1 thereto; Stern Decl., Exh. 6 [Abrogina Decl., Docket 107-3], ¶ 8; *Stephens v. Toomey*, 51 Cal.2d 864, 870 (1959) (referring to Pen. C. § 1203.4 as "statutory rehabilitation" where "the proceedings be expunged from the record and the case dismissed").

Approximately three months thereafter, in or around early January of 2014, Plaintiff went to Suna Solutions, Inc. ("Suna"), a temporary staffing agency, and completed the paperwork for a job opening at Alere, Inc. ("Alere").  (Stern Decl., Exh. 3 [SAC], ¶ 36, 37; Stern Decl., Exh. 6 [Abrogina Decl., Docket 107-3], ¶ 11.)

On January 24, 2014, Plaintiff signed Suna's disclosure and authorization to obtain background check information forms, and started working at Alere's jobsite on or about February 3, 2014. (Stern Decl., Exh. 2 [Plaintiff's First Amended Complaint], ¶ 33; Stern Decl., Exh. 6 [Abrogina Decl., Docket 107-3], ¶ 10.)

On or about February 10, 2014, Suna made a request to Kentech to furnish a consumer report about Plaintiff.  (Stern Decl., Exh. 3 [SAC], ¶ 37; Stern Deck., Exh. 6 [Abrogina Decl., Docket 107-3], ¶ 12.)  Kentech primarily provides background screening for security clearance for police departments and government entities, with a small portion of the business dedicated to employment background checks for non-police and non-government employers.  (Stern Decl., Exh. 4 [Motion for Class Cert.], exh. 1 thereto; Stern Decl., Exh. 8 [deposition of Kenneth Coats ("Coats Depo.")], Vol. 1, at 71:7-72:7.)

To prepare the report, Kentech obtained information from a vendor's database which identified the San Diego County criminal case in which Plaintiff had been convicted of Felony Grand Theft and sentenced to three years formal probation, a probation fine of $680, and a restitution fine of $82,434.  (Stern Decl., Exh. 3 [SAC], ¶¶ 44, 49, & exh. 2 thereto; Stern Decl., Exh. 8 [Coats Depo.], Vol. 1, at 101:2-105:2.)

Kentech verified the conviction by accessing the San Diego Superior Court's website and copying the information available online.  (Stern Decl., Exh. 3 [SAC],

¶¶ 51-53, & exh. 3 thereto.)   When Kentech's researcher accessed San Diego Superior Court's website to verify the fact of Plaintiff's criminal conviction, the website did not show that the conviction had been dismissed and/or expunged nor did it state that Plaintiff's "petition for relief pursuant to [California Penal Code §] 1203.4" was "granted".   (Stern Decl., Exh. 3 [SAC], ¶ 53, & exh. 3 thereto.) Instead, unbeknownst to Kentech, the San Diego Superior Court's website had "outdated" information on Plaintiff's criminal case.   (Stern Decl., Exh. 3 [SAC], ¶ 50.)   Kentech did not send a researcher down to the San Diego Superior Court website to copy physical records at the clerk's office.   (Stern Decl., Exh. 3 [SAC], ¶ 57.)

On or about February 11, 2014, Kentech furnished to Suna and/or Alere, a consumer report about Plaintiff.   (Stern Decl., Exh. 3 [SAC], ¶ 37; Stern Decl., Exh. 6 [Abrogina Decl., Docket 107-3], ¶ 13; Stern Decl., Exh. 4 [Plaintiff's Motion for Class Cert.], at exh. 6 thereto, PDF pp.896-898.)   The report, attached to Plaintiff's SAC as Exhibit 2, has an "Investigative Section."   (Stern Decl., Exh. 3 [SAC], ¶¶ 44, 49, & exh. 2 thereto; Stern Decl., Exh. 5 [Fok Decl.]; Stern Decl., Exh. 4 [Plaintiff's motion for class cert.] at exh. 6 thereto, pp. 897-98.)   In the "Investigative" section of Kentech's report on Plaintiff, there are two subsections, one entitled "County Validation" and the other entitled "Cops 360 Nationwide." (*Id*.) The "County Validation" section lists Plaintiff's theft conviction by case number and further noted, "CASE HAS BEEN NEITHER IMAGED NOR MICROFILMED FOR FURTHER REVIEW OF ITS NATURE". (*Id*.) The "Cops 360 Nationwide" section also includes Plaintiff's theft conviction by case number and states the source was the P.R.I.O.R.S database. (*Id*.)

Given that the public information accessible on the San Diego Superior Court's website did not show a dismissal or expungement of Plaintiff's criminal conviction, Kentech's report did not include any information to the effect that the conviction had been dismissed and/or expunged nor did it state that that Plaintiff's

"petition for relief pursuant to [California Penal Code §] 1203.4" was "granted". (Stern Decl., Exh. 3 [SAC] ¶ 50.)

As a result, Plaintiff alleges that her consumer report dated February 11, 2014 was inaccurate, incomplete, outdated and duplicative, because Kentech reported the conviction without reporting the expungement/dismissal by the court; reported the same criminal history information twice in different parts of her report which she alleges made it appear that she had more than one conviction; and omitted the disposition, disposition date, offense, offense date, and type. (Stern Decl., Exh. 6 [Abrogina Decl., Docket 107-3], ¶ 15; Stern Decl., Exh. 3 [SAC] ¶ 39.)

Plaintiff alleges that as a result of Kentech's background check report, she was not allowed to return to work at Alere. (Stern Decl., Exh. 6 [Abrogina Decl., Docket 107-3], ¶ 16; Stern Decl., Exh. 3 [SAC] ¶ 38.) Plaintiff disputed the report with Kentech, and thereafter, a Kentech employee spoke with the clerk's office at the San Diego Superior Court who confirmed it was expunged but said that expungement in criminal justice records does not erase or seal records after conviction regardless if they are dismissed or not and that it was up to Kentech's discretion to report them or not. (Stern Decl., Exh. 9 [Coats Depo.], 664:6-16; Decl. of Kenneth Coats ("Coats Decl."), Exh. 1.) A Kentech employee also spoke to the Suna employee who had ordered the report, and that Suna employee advised "there was no urgency on her part and that the applicant [Plaintiff] hadn't met other standards and left their program early February". (Coats Decl., Exh. 1.)

Plaintiff alleges that even though Kentech issued another background check report without the conviction after she disputed the report, she was never re-hired at Alere. (Stern Decl., Exh. 6 [Abrogina Decl., Docket 107-3], ¶ 17-19; Stern Decl., Exh. 3 [SAC] ¶¶ 40-42.)

On or around March 17, 2016, Plaintiff commenced this action against Kentech and others. The case was stayed for nearly five years pending the resolution of arbitration proceedings between Plaintiff and Suna. Thereafter,

Plaintiff filed her Second Amended Complaint ("SAC"), which included class action allegations on behalf of a putative class, and alleged the following causes of action against Kentech: (1) First Cause of Action for violation of 15 U.S.C. § 1681k(a); (2) Second Cause of Action for violation of 15 U.S.C. § 1681e(b); (3) Third Cause of Action for violation of Cal. Civ. Code § 1786.28(b); (4) Fourth Cause of Action for violation of Cal. Civ. Code § 1786.20(b); and (5) Fifth Cause of Action for violation of Cal. Bus. & Prof. Code § 17200.

On or about February 6, 2023, Plaintiff filed her motion for class certification. In her motion for class certification, Plaintiff further narrowed and amended her claims, which is allowed at the stage of a motion for class certification. *See, e.g., Hawkins v. Kroger Co*., 337 F.R.D. 518, 527 (S.D. Cal. 2020) ("Given that courts are empowered to narrow class definitions at the class certification stage, it is only fair that plaintiffs should be allowed to voluntarily request that the court do so."); *McCurley v. Royal Seas Cruises, Inc*., 331 F.R.D. 142, 162 (S.D. Cal. 2019) ("A plaintiff may properly narrow the class for which it seeks class certification even in a reply brief."); *Gold v. Lumber Liquidators Inc*., Case No. 14-cv-05373-TEH, 2017 WL 2688077, at *4 (N.D. Cal. June 22, 2017) ("[G]iven that courts frequently allow plaintiffs to seek certification of narrowed classes without amending their complaint, and given that district courts are tasked with ensuring class definitions are properly tailored, it would not make sense to prohibit a plaintiff from narrowing their class definition, especially when they are seeking leave to do so[.]"); *Bee, Denning, Inc. v. Capital All. Grp*., 310 F.R.D. 614, 621 (S.D. Cal. 2015) ("The primary exception to this principle [that the court is bound by the complaint] is when a plaintiff proposes a new class definition that is narrower than the class definition originally proposed, and does not involve a new claim for relief."); *Abdeljalil v. Gen. Elec. Capital Corp*., 306 F.R.D. 303, 306 (S.D. Cal. 2015) (permitting the plaintiff to propose a new class definition in his motion for class certification when the new definition was "simply a narrower version of the class

definition presented in the [amended complaint]"); *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12–cv–0964–GPC–DHB, 2013 WL 4774763, at *5 (S.D. Cal. Sep. 5, 2013) (allowing plaintiffs to propose a class definition narrower than the class alleged in plaintiffs' second amended complaint when the new definition "include[d] individuals that were allegedly called in violation of the same subsection of the TCPA").

Specifically, Plaintiff amended and narrowed her proposed classes down to one each under 15 U.S.C. §1681e(b) [reasonable procedures] and §1681k(a)(2) [strict procedures] for allegedly missing data points and a third under 15 U.S.C. §1681e(b) for claimed duplicative information. (Stern Decl., Exh. 4 [Motion for class certification], pp. 2:24-3:14.) Plaintiff also waived her actual damage claims in her motion for class certification. (Stern Decl., Exh. 4 [Motion for class certification] at 16:22-17:18, 21:26, 22:20-23.)

On or about May 8, 2023, the Court denied Plaintiff's motion for class certification. (Docket No. 128.)

Therefore, with no certified class claims having come into existence, the only claims currently alive in this case are Plaintiff's remaining individual claims following her pleading amendments. *Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 926 (S.D. Cal. 2021).

As of the filing of this Motion, Kentech is the last remaining defendant.

## III.   Legal Standard

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment, or partial summary judgment, is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' " that show an absence of dispute regarding a material fact. *Id.*

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts' " that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.  In addition, a party may not create an issue of fact by submitting an affidavit contradicting earlier sworn testimony.  *Radobenko v. Automated Equipment Co.*, 520 F.2d 540 (9th Cir.1975).

## IV. Summary Judgment Should Be Granted in Favor of Kentech

As set forth below, on the basis of undisputed material facts, summary judgment should be entered in favor of Kentech on all remaining claims.  In the alternative, partial summary judgment should be entered in favor of Kentech for the reasons set forth below.

### A. Judgment Should Be Entered in Favor of Kentech on Plaintiff's Claim for a Violation of 15 U.S.C. §1681e(b) [reasonable procedures]

15 U.S.C. § 1681e(b), "Accuracy of Report," states as follows:  "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable

procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

The Ninth Circuit has held as follows:

> Liability under § 1681e(b) is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information. *Cahlin v. General Motors* (citations omitted)... **In order to make out a prima facie violation under § 1681e(b), a consumer <u>must present evidence</u> tending to show that a credit reporting agency prepared a report containing inaccurate information.** *Cahlin*, 936 F.2d at 1156. The FCRA does **not** impose strict liability, however—an agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures. The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases. *Id.*

*Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995) (Emphasis added).

On the basis of the undisputed material facts, the Court should grant judgment in favor of Kentech on this count.  First, Kentech followed reasonable procedures to ensure accuracy of the information reported because Kentech obtained information it believed to be accurate and further verified the existence of Plaintiff's criminal case with the San Diego Superior Court's website which showed Plaintiff's criminal case without showing any dismissal or expungement. *Henson v. CSC Credit Servs.,* 29 F.3d 280, 285 (7th Cir. 1994); Coats Depo., 104:24.  As the Seventh Circuit explained in *Henson* when it found that checking the court docket alone constituted a reasonable procedure under the FCRA:

> "We agree and hold that, as a matter of law, a credit reporting
> agency is not liable under the FCRA for reporting inaccurate
> information obtained from a court's Judgment Docket, absent
> prior notice from the consumer that the information may be
> inaccurate. A contrary rule of law would require credit
> reporting agencies to go beyond the face of numerous court
> records to determine whether they correctly report the outcome
> of the underlying action. Such a rule would also require credit
> reporting agencies to engage in background research which
> would substantially increase the cost of their services. In turn,
> they would be forced to pass on the increased costs to their
> customers and ultimately to the individual consumer."

*Id*. On this basis alone, judgment should be entered in favor of Kentech.

Plaintiff seems to contend that unless Kentech sent a runner down to the San Diego Superior Court to obtain a "physical copy" of the records of the case, Kentech somehow was not following a "reasonable" procedure under the statute. Kentech disputes that the statute mandates sending a runner to the court. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994). Kentech further notes that even if Kentech had sent a runner to the San Diego Superior Court to obtain the physical records of the criminal case here, there is no evidence that Kentech could have obtained anything other than, at most, a copy of the September 13, 2013 minutes with the stamped notation that "Plaintiff's "petition for relief pursuant to [California Penal Code §] 1203.4" was "granted". This language is not self-explanatory and does not say anything about "dismissal" or "expungement" of Plaintiff's criminal conviction. Thus, Plaintiff's argument amounts to the assertion that Kentech should additionally have the obligation to ***legally interpret*** the physical records of her criminal case as though Kentech were a tribunal here, when in fact the tribunal itself is not reporting her case as having been "dismissed" or "expunged". The FCRA

does not impose such an obligation on Kentech.  *See, e.g., Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010) ("[C]redit reporting agencies are not tribunals. They simply collect and report information furnished by others. Because CRAs are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims. "); *Sessa v. Linear Motors, LLC*, 2021 WL 6052134 (S.D.N.Y. 2021) (FCRA does not require a credit reporting agency to review the underlying legal documents giving rise to a consumer's debt obligations to verify the legal validity of those debts prior to reporting said debts on the consumer's credit report).  Of note, Plaintiff herself testified at her deposition that she believed it was accurate to state that she was convicted of felony grand theft, and other than something she described as a "letter from the court" that was not included with her initial disclosures, and information from her own personal attorney, she has never received any record showing her conviction was "expunged."  (Stern Decl., Exh. 7 [Abrogina Depo.], 97:-98:20; Stern Decl., ¶ 12.)

Second, the information reported by Kentech was not patently incorrect or materially misleading.  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (a report is "inaccurate" if it contains information that is either "patently incorrect" or "materially misleading") (quotation marks omitted).  Plaintiff did in fact steal money from her prior employer and was in fact criminally convicted of felony grand theft and the reported information on her conviction, fine, and restitution fine all accurately reflect her conviction and sentencing.  *See, e.g., Middlebrooks v. Retail Credit Co*., 416 F. Supp. 1013, 1015 (N.D. Ga. 1976) (accurate to report fact of plaintiff's arrest when plaintiff did not dispute the arrest); *Todd v. Associated Credit Bureau Servs., Inc*., 451 F. Supp. 447, 448 (E.D. Pa. 1977), *aff'd*, 578 F.2d 1376 (3d Cir. 1978) (accurate to report debt owed without mentioning the plaintiffs had eventually paid off their debt); *Austin v. BankAmerica Serv. Corp*., 419 F. Supp. 730, 733 (N.D. Ga. 1974) (accurate to report that the

1  defendant was being sued in a lawsuit, without noting the capacity in which he was

2  being sued, as the omission "does not impugn the accuracy of the report but instead

3  would merely be helpful in making a complete evaluation").

4        In other words, the information on the report is not incorrect or inaccurate;

5  instead, at most, it is missing other information that Plaintiff contends allegedly

6  makes it materially misleading.  The FCRA statute makes a distinction between

7  reporting information that is "inaccurate" versus reporting information that is

8  "incomplete."  Leaving aside whether the report was incomplete, for purposes of

9  Plaintiff's argument that reporting the true facts concerning her criminal conviction

10  is "inaccurate", again, this Court would have to conclude that Kentech had the

11  obligation not only to send a runner to the state court to obtain the minutes from the

12  criminal case but also that Kentech somehow had the obligation to interpret those

13  minutes to reach the legal conclusion that because her "petition for relief pursuant to

14  PC 1203.4" was "granted", it would be "misleading" to report even a single one of

15  the true facts regarding her criminal conviction—even when "PC 1203.4" itself has

16  a number of exceptions carved out for when the conviction could continue to have

17  significance and case law holds that a PC 1203.4 order **does not eradicate a**

18  **conviction**.  *Adams v. Cnty. of Sacramento*, 235 Cal.App.3d 872, 877–78 (1991),

19  modified (Oct. 31, 1991).

20        Again, there is no such obligation imposed on Kentech under the statute and

21  since the information included in the report was "accurate" this count fails.[4]  *See,*

22  _____

23  [4] Kentech also notes that this case concerns a criminal conviction, not credit

24  reporting information obtained, for example, from a financial institution that reports
   information to an agency.  While a criminal conviction is "public record

25  information" under Section 1681k of the FCRA, Section 1681e of the FCRA does
   not include a reference to public record information and therefore a criminal

26  conviction is not within the purview of the statute.  In any event, Section 1681k

27  states that public record information "shall be considered up to date if the current

28  public record status of the item at the time of the report is reported," which is what

*e.g., Potter v. Chex Sys., Inc*., 128 F. Supp. 3d 1276, 1279 (S.D. Cal. 2015) ("The FCRA does not require that accurate negative information be removed from credit reports merely because the consumer disagrees with the language used."); *Fite v. Retail Credit Company*, 386 F.Supp. 1045 (D. Mon. 1975) ("A credit reporting agency could lawfully report the record of an arrest or an indictment and a judgment of acquittal. Here the fact is that consumer by his plea of guilty admitted a theft. **That the conviction is set aside does not alter the fact of the theft nor the admission of it**. If the facts of the arrest, indictment, and arraignment may be reported, even in those cases where there has been an acquittal, a holding that the same facts could not be reported after an admission of guilt simply because the court had seen fit to proceed under the Youth Corrections Act would be paradoxical.") (emphasis added).

Last, Plaintiff also cannot sustain her burden to show that any omission of the minutes of the state court showing that her petition for relief pursuant to PC 1203.4 was granted, was misleading in a way and to such an extent that it could be expected to have an adverse effect. *See Gorman*, 584 F.3d at 1163 ("The consumer must still convince the finder of fact that the omission of the dispute was 'misleading in such a way and to such an extent that [it] can be expected to have an adverse effect.' " (quoting *Saunders*, 526 F.3d at 150) (alteration in original)). If the allegation is that the true fact of her conviction caused her to lose an employment opportunity, the true fact of her conviction is still the case, even if her petition for relief was granted. Further, as the evidence reflects, Suna advised Kentech that Plaintiff had "left their program" in early February because she "hadn't met other standards". (Coats Decl., Exh. 1.)

For these reasons, judgment should be entered in favor of Kentech.

---

occurred here based on the San Diego County Superior Court website search.

**B.    Judgment Should Be Entered in Favor of Kentech on Plaintiff's Claim for a Violation of 15 U.S.C. §1681k(a)(2) [strict procedures]**

Under Section 1681k(a)(2), a consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall—"(2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported."

Here, Kentech did "maintain strict procedures" namely to verify the criminal conviction by accessing the records of the San Diego Superior Court available online.  The public record information available online showed Plaintiff's conviction.  Any failure to additionally include a notation of the September 2013 order of the state court granting Plaintiff's PC 1203.4 petition is not caused by Kentech's failure to maintain strict procedures here; but rather, from the state court's failure to update its own website, notwithstanding the fact that Kentech's strict procedures were followed.  (Stern Decl., Exh. 8 [Coats Depo.], Vol. 1, 78:17-79:5, 268:4-6; Stern Decl., Exh. 9 [Coats Depo.] Vol. 2, 448:20-449:8, 449:20-450:6, 684:15-685:3, 687:9-690:1, 700:6-702:22.)

To the extent Plaintiff argues that Kentech's strict procedures were not designed to ensure that the information reported was "complete and up to date", again, as set forth above, Kentech disputes that it was required to send a runner to the court.  In any event, even if a runner had been sent, at most this would have revealed minutes in the record showing that a petition brought by Plaintiff pursuant to "PC 1203.4" had been "granted."  To require Kentech to then interpret those

minutes and draw the legal conclusion that Plaintiff's criminal case had been
dismissed and/or expunged and therefore should not be reported at all, when those
words do not appear anywhere in the state court minutes, imposes a duty on Kentech
to evaluate, interpret, and apply California state criminal law as though Kentech
itself were a tribunal or a lawyer, when Kentech is neither.  Moreover, Penal Code
1203.4 does not "eradicate" the fact of Plaintiff's conviction.  As stated in *Adams v.
Cnty. of Sacramento*, 235 Cal.App.3d 872, 877–78 (1991), modified (Oct. 31,
1991):

> "In California, expungement of a conviction is governed by
> Penal Code section 1203.4. When a court orders a conviction
> set aside under that section, the defendant shall 'be released
> from all penalties and disabilities resulting from the offense of
> which he or she has been convicted....' However, expungement
> under Penal Code section 1203.4 **does not eradicate a
> conviction or purge a defendant of the guilt established
> thereby**. (*Meyer v. Board of Medical Examiners* (1949) 34
> Cal.2d 62, 65, 206 P.2d 1085.) That section was **never
> intended to obliterate the fact that defendant has been
> 'finally adjudged guilty of a crime.'** (*In re Phillips* (1941) 17
> Cal.2d 55, 61, 109 P.2d 344.) It merely frees the convicted
> felon from certain "penalties and disabilities" of a criminal or
> like nature. (*Copeland v. Dept. of Alcoholic Bev. Control*
> (1966) 241 Cal.App.2d 186, 188, 50 Cal.Rptr. 452; *Kelly v.
> Municipal Court* (1958) 160 Cal.App.2d 38, 41–46, 324 P.2d
> 990.)"

At all times here, the "public information" showed Plaintiff's conviction and
even if additional procedures would have been followed, the public information still
would have showed Plaintiff's conviction.  If the allegation is that the true fact of

her conviction caused her to lose an employment opportunity, the true fact of her conviction is still the case, even if her petition for relief was granted.  There is no causal link here between any failure of Kentech to follow strict procedures and any claimed adverse effect to Plaintiff.  *Aldaco v. RentGrow, Inc*., 921 F.3d 685, 690 (7th Cir. 2019) (affirming summary judgment in favor of agency where lack of causation from truthfully reporting criminal conviction but inaccurately reporting the sentence).  Further, as the evidence reflects, Suna advised Kentech that Plaintiff was not being hired for other reasons.  (Stern Decl., Exh. 9 [Coats Depo.], 659:12-18; Coats Decl., Exh. 1.)

For these reasons, judgment should be entered in favor of Kentech.

## C.   Judgment Should Be Entered in Favor of Kentech on Plaintiff's Claim for a Violation of 15 U.S.C. § 1681e(b) for claimed duplicative information

According to her class certification motion, Plaintiff is also claiming that Kentech is liable for a violation of Section 1681e(b) because Kentech included information about her criminal conviction in two separate parts of the report, which she contends creates an impression that she had two different convictions or cases.

Plaintiff's Section 1681e(b) claim based on claimed duplicative information fails for the same reasons addressed above with regard to her other Section 1681e claim.  Among other things, Kentech did follow reasonable procedures and the information is accurate.

Further, the alleged duplicative information is a match in the two sections of the report and cannot be reasonably construed as misleading.  In the "County Validation" section, the jurisdiction is shown as "CA-San Diego" and the case number is shown as "SCD214325" with a file date of 6/20/2008.  Under the "COPS360 NATIONWIDE" section of the report, the file date is also shown as "2008-06-20", the Case Number is also shown as "SCD214325" and the state is shown as "CA" and the County as "San Diego."  A reasonable reader of the report

would conclude that there is one conviction, verified through a county search and reported in a database but nonetheless consisting of one conviction, and therefore not materially misleading or inaccurate.

In addition, for the reasons set forth above, there is no causation here and Plaintiff will be unable to show that any inaccuracy in reporting the same case in two different parts of the report caused her to experience any adverse effect.  As the evidence reflects, Suna advised Kentech that Plaintiff was not being hired for other reasons.  (Stern Decl., Exh. 9 [Coats Depo.], 659:12-18; Coats Decl., Exh. 1.)

### D.    There Is No Evidence of Any Willful Failure to Comply

As set forth above, Plaintiff narrowed her pleading at the class certification motion part of this case but to the extent Plaintiff contends she is still asserting a "willful" misconduct claim, summary judgment should be entered on such a claim because there is no evidence of any willful misconduct here.  Defendant checked the San Diego County Superior Court's website for convictions relating to Plaintiff, thereby demonstrating a designed effort and intent to ensure both accuracy of the report and compliance under the FCRA.   The report accurately reflected the information publicly recorded by the San Diego Superior Court about Plaintiff's conviction.

Under the FCRA, willful violations include both knowingly and recklessly violating the law with actions that "entail[ ] an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–58, 68–69 (2007) (quotation omitted).  A violation based on an erroneous but objectively reasonable reading of the FCRA is not willful. *Safeco*, 551 U.S. at 69. To assess whether a reading is objectively reasonable, courts consider whether the reading "has a foundation in the statutory text" or whether parties have the "benefit of guidance from the courts of appeals" or federal regulatory agencies. *Id*. at 69–70.

Here, the undisputed facts reflect that Kentech had no prior knowledge of any

PC 1203.4 petition of Plaintiff's prior to her informing Kentech after the fact, that Kentech followed its procedures and verified the 2009 criminal conviction information by accessing the San Diego Superior Court's website that did not show the minutes from Plaintiff's petition under PC 1203.4, and Kentech promptly issued a new report after Plaintiff brought her concern to Kentech's attention.  (Stern Decl., Exh. 8 [Coats Depo.], Vol. 1, 78:17-79:5, 268:4-6; Stern Decl., Exh. 9 [Coats Depo.] Vol. 2, 448:20-449:8, 449:20-450:6, 684:15-685:3, 687:9-690:1, 700:6-702:22.)  There are no facts showing any ill will on the part of Kentech.  (*Id*.)  As such, Kentech's actions were not "willful" under the statute, and summary judgment should be entered against Plaintiff on any such contention as well.  *Stevenson v. TRW Inc*., 987 F.2d 288, 294 (5th Cir. 1993) ("The record does not reveal, however, any intention to thwart consciously Stevenson's right to have inaccurate information removed promptly from his report. The district court's finding of willful noncompliance, we must conclude, was clearly erroneous.").

**V.    Conclusion**

For the reasons set forth below, based on the undisputed material facts, Kentech respectfully submits that judgment should be entered in favor of Kentech and against Plaintiff.

DATED:  July 5, 2023                                   MESSNER REEVES LLP

                                                                  */s/ Heather Stern*
                                                                  _____
                                                                  Kathleen Carter
                                                                  Heather Stern
                                                                  Jeffrey Gillette
                                                                  Attorneys for KENTECH
                                                                  CONSULTING, INC.

1

## **<u>PROOF OF SERVICE</u>**

2

**Abrogina v. Kentech**

3

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

4

At the time of service, I was over 18 years of age and not a party to this

5

action.  I am employed in the County of Orange, State of California.  My business

6

address is 650 Town Center Drive, Suite 700, Costa Mesa, CA 92626.

7

On July 5, 2023, I served true copies of the following document(s) described

8

as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

9

**DEFENDANT KENTECH CONSULTING, INC.'S MOTION FOR**

10

**SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL**

11

**SUMMARY JUDGMENT** on the interested parties in this action as follows:

12

DHF LAW, APC
Devin Fok

LAW OFFICE OF JOSEPH LEE
Joseph Lee, Esq.

13

Ainat Kiewe
2304 Huntington Drive, Suite 210

1055 E. Colorado Blvd., Suite 500
Pasadena, CA  91106

14

San Marino, CA  91108
Phone: (888) 651-6411

Phone: (626) 474-1120
Email:

15

Emails:
devin@devinfoklaw.com

joseph@lawjoelee.com

16

ainat@devinfoklaw.com

17

18

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of
the document(s) to be sent from e-mail address mcross@messner.com to the persons

19

at the e-mail addresses listed in the Service List.  I did not receive, within a
reasonable time after the transmission, any electronic message or other indication

20

that the transmission was unsuccessful.

21

I declare under penalty of perjury under the laws of the United States of

22

America that the foregoing is true and correct and that I am employed in the office

23

of a member of the bar of this Court at whose direction the service was made.

24

Executed on July 5, 2023, at Santa Ana, California.

25

26

*/s/ Mary Cross*

27

Mary Cross

28